UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCISCO LLANTADA-GARCIA, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CASE NO.   C06-1204-JCC-MJB <br> (CR04-53-JCC) <br><br><br> REPORT AND RECOMMENDATION |

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

Petitioner Francisco Llantada-Garcia is a federal prisoner who is currently incarcerated at the Federal Correctional Institution at Victorville, California. He has filed a motion pursuant to 28 U.S.C. §2255 seeking to vacate, set aside, or correct the sentence imposed upon him following his 2004 federal conviction on a charge of possession of methamphetamine with intent to distribute. Respondent has filed a response to petitioner's §2255 motion. After careful consideration of petitioner's motion, the briefs of the parties, and the balance of the record, this Court concludes that petitioner's §2255 motion should be denied.

REPORT AND RECOMMENDATION
PAGE - 1

FACTS

On January 30, 2004, agents of the Drug Enforcement Administration ("DEA") arrested a woman named Xochitl Ochoa. (CR04-53-JCC, Dkt. No. 64 at 4.) Ochoa was a federal fugitive who had pleaded guilty to federal drug charges in 2003, but had absconded prior to sentencing. (*Id*., at 8, 11, and 55-57.) After her arrest in January 2004, Ochoa agreed to cooperate with law enforcement. (*Id*. at 57-58.) At the request of law enforcement, Ochoa began making calls to her drug suppliers and attempting to order drugs. (*Id*. at 4-5, and 14.) Ochoa spoke Spanish during her calls to the drug suppliers, and the calls were monitored by Detective Jose Vargas of the Snohomish Regional Narcotics Task Force who is a native Spanish-speaker. (*Id*. at 14-15, and 78-79.)

One of the individuals contacted by Ochoa on January 30, 2004, was a man whom Ochoa knew as "Pancho." (*See id*. at 61.) Ochoa testified at trial that she knew Pancho's real name was Francisco, and she identified petitioner in court as the man she knew as Pancho. (*See id*.) During her first call to petitioner on the evening of January 30, 2004, Ochoa ordered a half pound of methamphetamine in ice form. (*Id*. at 63-64.) Agents attempted to record this call, but the recorder malfunctioned. (*Id*. at 20.)

The following day, January 31, 2004, there were a series of calls between Ochoa and petitioner during which they finalized the deal and discussed where to meet. (*See id*. at 63-64, 81, and 119-130.) Many of the phone calls between Ochoa and petitioner were recorded and transcripts of those recordings were admitted and read at petitioner's trial.[1] (*Id*. at 21 and 119-130.) The transcripts of the calls between Ochoa and petitioner reveal that petitioner advised Ochoa during one of the calls

---

[1] Because the tape recordings of the telephone conversations between petitioner and Ochoa were in Spanish, English translations of the recordings were read to the jury. (CR04-53-JCC, Dkt. No. 64 at 117-130.)

REPORT AND RECOMMENDATION
PAGE - 2

that the price would be $5000.  (CR04-53-JCC, Dkt. No. 64 at 128.)  Petitioner further advised Ochoa that he didn't want to make anything on the deal and that the deal would take care of a debt he owed her.  (*Id*. at 128.)  During the same call, the two agreed to meet at the Home Depot in Everett, Washington, near the Wendy's restaurant, in 45 minutes.  (*Id*. at 127-128.)

Snohomish Regional Drug Task Force detectives drove Ochoa to the designated location.  (*Id*. at 24 and 81.)  Ochoa had previously informed agents of the type of vehicle petitioner would be driving; *i.e.*, a gold Ford Taurus.  (*Id*. at 24 and 61.)  When petitioner's vehicle arrived in the parking lot of the Home Depot, detectives drove Ochoa by the vehicle and she identified petitioner as Pancho.  (*Id*. at 25, and 81-82.)  Petitioner's vehicle was thereafter stopped by a marked police unit, and petitioner was arrested by DEA agents.  (*Id*. at 25, 85, and 88.)

Following his arrest, petitioner's vehicle was searched and agents located a paper bag underneath the driver's seat which contained a substance which field-tested positive for methamphetamine.  (*Id*. at 90-91.)  The substance was subsequently sent to the DEA laboratory in San Francisco for further testing.  (*Id*. at 100-101.)  A DEA chemist testified that his tests of the seized substance revealed that the substance weighed 219.4 grams, or approximately one half pound, and that the substance was methamphetamine.  (*Id*. at 107.)  The chemist further testified that the methamphetamine tested was 96% pure.  (*Id*. at 109.)

Petitioner was thereafter charged with possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (CR04-53-JCC, Dkt. No. 6.)  Petitioner proceeded to trial in June 2004, and petitioner was convicted by a jury of the charged offense.  (*Id*., Dkt. Nos. 37 and 42.)  In September 2004, petitioner was sentenced to 120 months confinement.  (*Id*., Dkt. Nos. 51 and 52.)

## PROCEDURAL HISTORY

Petitioner appealed his conviction to the United States Court of Appeals for the Ninth Circuit. (CR04-53-JCC, Dkt. No. 53.) On appeal, petitioner argued that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, when his attorney elicited evidence from Xochitl Ochoa which revealed her concern that the drug suppliers who were arrested as a result of her cooperation knew where her mother and her young children lived. *See United States v. Llantada-Garcia*, 2005 WL 1153554, *7 (C.A. 9). The Court of Appeals rejected petitioner's ineffective assistance of counsel claim on the grounds that petitioner had shown no prejudice arising from counsel's allegedly deficient conduct. *United States v. Llantada-Garcia*, 141 Fed. Appx. 626 (9th Cir. 2005).

On August 21, 2006, petitioner filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his motion, petitioner identifies the following grounds for relief: (1) he was denied his Sixth Amendment right to effective representation at trial "due to trial counsel eliciting evidence;" (2) he was denied his right to effective assistance of trial and appellate counsel when counsel "failed to raise issues and/or investigate and/or object to crucial and pertinent moments during trial/appeal;" (3) he was denied his right to effective assistance of counsel when counsel failed to raise the "safety valve" issue; and, (4) he was denied his rights under the Fifth Amendment by an illegal indictment which failed to define the elements of his offense.[2] (*See* Dkt. No. 1 at 3, 4, 6, and 7.)

---

[2] Petitioner also makes reference in his motion to "Booker/Blakely Issues." (*See* Dkt. No. 1 at 9.) However, he does not specifically assert in his motion any claim under *United States v. Booker*, 543 U.S. 220 (2005) and/or *Blakely v. Washington*, 542 U.S. 296 (2004).

REPORT AND RECOMMENDATION
PAGE - 4

On September 18, 2006, respondent filed an answer to petitioner's § 2255 motion. (Dkt. No. 9.) Subsequently, on October 23, 2006, the government filed a status report in which it advised the Court that it had received from petitioner a pleading entitled "Traverse Motion/Response and/or Memorandum to Support § 2255 Application to Vacate Sentence." (Dkt. No. 11.) The government provided the Court with a copy of the pleading in conjunction with its status report. (*See id.*) After reviewing the document, this Court concluded that it should be construed as a response to respondent's answer to § 2255 motion, even though the document had never been properly filed by petitioner. (*See* Dkt. No. 13.)

On January 19, 2007, this Court issued an Order directing the government to file a reply brief addressing the new issues raised by petitioner in his response. (*See id.*) On January 26, 2007, the government filed a supplemental response which addresses petitioner's new arguments and also incorporates the previous arguments made by the government in its original response. (Dkt. No. 14.) The briefing is now complete and petitioner's § 2255 motion is ripe for review.

## DISCUSSION

### Ineffective Assistance of Counsel

Petitioner's first, second, and third grounds for relief implicate petitioner's right to effective assistance of counsel. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 691-92.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. The petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id.* at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id.*

### 1. *Eliciting Evidence from Government Witness*

Petitioner asserts in his first ground for relief that he was denied the effective assistance of counsel at trial "due to trial counsel eliciting evidence." (Dkt. No. 1 at 3.) Petitioner offers no further explanation of his claim in his § 2255 motion nor does he assert any facts which might illuminate the claim further. (Dkt. No. 1 at 3.) In his traverse, petitioner states his claim in the same fashion; *i.e.*, that he was denied effective assistance of counsel "due to trial counsel eliciting evidence." (Dkt. No. 11, Attachment at 3.) However, he also asserts, at the very end of his argument in support of his first ground for relief, that trial counsel failed to interview witnesses who had exculpatory knowledge, and refused petitioner's requests to subpoena key witnesses. (*Id.* at 5.) Petitioner does not identify the

witnesses whom he claims counsel should have interviewed or the witnesses whom he claims counsel refused to subpoena. In the absence of such facts, there is no basis on which to conclude that counsel's performance was deficient or that the allegedly deficient performance prejudiced petitioner. Accordingly, petitioner's motion should be denied with respect to his first ground for relief.[3]

### *2.  Ineffectiveness of Trial and Appellate Counsel*

Petitioner asserts in his second ground for relief that he was denied the effective assistance of trial and appellate counsel. Petitioner contends that counsel failed to raise issues, to investigate, and/or to object at crucial moments during the trial and on appeal. He further contends that he was prejudiced by his counsels' failure to adequately advocate for him. Petitioner offers no specific facts or legal arguments to support these contentions in his § 2255 motion.

In his traverse, petitioner asserts more specifically that trial counsel rendered ineffective assistance when he failed to move to suppress evidence. Petitioner is apparently of the belief that counsel should have moved to suppress the drugs found in his car, the tape recorded conversations between himself and the government informant, and the testimony of the government informant. Petitioner also appears to assert in his traverse that trial counsel should have raised the issue of sentencing entrapment. Finally, petitioner faults appellate counsel for failing to raise these issues on appeal.

---

[3] The government construed petitioner's first ground for relief as presenting the same claim as was raised and rejected on direct appeal. It is not clear if this was, in fact, petitioner's intent. However, to the extent petitioner may be seeking reconsideration of the claim made on direct appeal, this Court must concur with the government that the claim is not eligible for review in these § 2255 proceedings. Claims that have already been raised on direct appeal may not be raised in subsequent § 2255 motions absent a showing of manifest injustice or a change in law. *Polizzi v. United States,* 550 F.2d 1133, 1135 (9th Cir. 1976), *citing Kaufman v. United States*, 394 U.S. 217, 226-27 & n.8 (1969). Petitioner makes no such showing here.

REPORT AND RECOMMENDATION
PAGE - 7

While petitioner argues that counsel should have moved to suppress evidence, he fails to demonstrate that there was any basis for suppressing any of the challenged evidence.

a. <u>Suppression of Drugs</u>

"When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981). A warrantless arrest, such as the one effectuated in this case, is lawful "if, at the moment of arrest, facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir. 1986) (Citing *United States v. Howard*, 758 F.2d 1318, 1320 (9th Cir.1985)).

The record in this case reflects that agents had probable cause to arrest petitioner and that his arrest was therefore lawful. Thus, the search of petitioner's car incident to his arrest, during which the drugs were found, was also lawful. As there was no apparent basis on which to suppress the drugs found under the driver's seat of petitioner's car, counsel's failure to file a motion to suppress the drugs at trial, or to raise this issue on appeal, did not constitute deficient performance.

b. <u>Suppression of Recordings</u>

Law enforcement officers may record conversations between an informant and a suspect without prior judicial authorization when the informant consents to the recording. 18 U.S.C. § 2511(2)(c). The record makes clear that Ochoa knew the conversations between herself and petitioner were being recorded by the law enforcement officers with whom she had agreed to cooperate. Accordingly, there was no basis on which to suppress the tape recordings of those conversations, and,

REPORT AND RECOMMENDATION
PAGE - 8

thus, counsel's failure to file a motion to suppress the recordings at trial, or to raise the issue on appeal, did not constitute deficient performance.

      c.      <u>Suppression of Ochoa's Testimony</u>

Petitioner appears to assert that the testimony of the cooperating witness, Xochitl Ochoa, should have been suppressed because of her lack of credibility and previous lies to law enforcement authorities. However, lack of credibility is not a basis on which to suppress evidence. Petitioner's counsel had the opportunity to challenge Ochoa's credibility through his cross-examine of Ochoa at trial. The record indicates that petitioner's trial counsel ably cross-examined Ochoa. There was simply no basis on which to suppress Ochoa's testimony. Accordingly, counsel's failure to file a motion to suppress this evidence at trial, or to raise this issue on appeal, did not constitute deficient performance.

      d.      <u>Sentencing Entrapment</u>

Petitioner asserts that his counsel should have raised the issue of sentencing entrapment because the cooperating witness, Ochoa, sought to buy a larger quantity of drugs for the purpose of increasing petitioner's sentence. Sentencing entrapment "occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." *United States v. Castaneda*, 94 F.3d 592, 594 (9th Cir. 1996)(quoting *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir. 1994)).

Ochoa testified at trial that she had previously purchased methamphetamine from petitioner, but usually in quantities of four to six ounces at a time. (CR04-53-JCC, Dkt. No. 64 at 62.) She further testified that when she spoke to petitioner on January 30, 2004, she ordered a half pound; *i.e.*, eight ounces, of "ice." (*Id*. at 64.) On cross-examination, Ochoa, conceded that she had never gotten

REPORT AND RECOMMENDATION
PAGE - 9

a half pound of ice from petitioner before, but that agents had urged her to get the greatest quantity of drugs possible from the drug suppliers she contacted. (CR04-53-JCC, Dkt. No. 64 at 72.)

While the drug deal petitioner negotiated with Ochoa on January 30-31, 2004, involved a greater quantity of drugs than petitioner's previous transactions with Ochoa, petitioner apparently had ready access to that quantity of drugs because he was able to produce the drugs within a fairly short period of time. Petitioner makes absolutely no showing that he was entrapped into selling a larger quantity of methamphetamine than he was predisposed to sell. Thus, it does not appear from the record that there was any basis for arguing sentencing entrapment. And, even assuming that counsel had deemed sentencing enhancement a viable argument, petitioner fails to demonstrate that, had the issue been raised, it would have altered the outcome of the proceedings.[4] Accordingly, petitioner's § 2255 motion should be denied with respect to any claim regarding counsels' failure to raise the issue of sentencing entrapment.

### 3. *Safety-Valve*

Petitioner asserts in his third ground for relief that counsel rendered ineffective assistance when he failed to pursue a reduction in sentence pursuant to the "safety-valve" provision, 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The so-called "safety-valve" provision allows the court to disregard the statutory mandatory minimum and sentence a qualifying defendant to a lower guideline sentence, provided that the court finds at sentencing that

> (1)   the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

---

[4] It appears that even if Ochoa had requested only four or six ounces of methamphetamine, as she had on previous occasions, petitioner still would have been subject to a mandatory minimum 10 year sentence because the total amount of the drugs would have exceeded 50 grams. *See* 21 U.S.C. 841(a)(1)(B)(viii).

REPORT AND RECOMMENDATION
PAGE - 10

      (2)    the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

      (3)    the offense did not result in death or serious bodily injury to any person;

      (4)    the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848; and

      (5)    not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). *See also*, U.S.S.G. § 5C1.2.

The government argues that counsel did not render ineffective assistance by failing to request a safety valve reduction because petitioner did not qualify for such a reduction. Specifically, the government contends that petitioner failed to provide a truthful statement to the government concerning his offense as required by section (5) of the safety valve provision.

Petitioner asserts in his traverse that he was entitled to a safety valve reduction because he did qualify under the first four requirements, and because he never had the opportunity to truthfully provide the government with all information concerning the offense. Petitioner does not elaborate any further on his assertion that he did not have the opportunity to provide the government with information. However, petitioner goes on to cite to *United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996), wherein the Ninth Circuit held that a defendant who had confessed to knowledge of contraband, and had provided names of his contacts to federal agents, was eligible for a safety valve

REPORT AND RECOMMENDATION
PAGE - 11

reduction even though he denied at trial and at sentencing any knowledge that he was carrying drugs. *Id*. at 940. Petitioner's citation to *Shrestha* suggests that he may be intending to argue that because he was innocent of the offense, he had no information to provide to the government, and he therefore should not have been precluded from receiving a safety valve reduction.

However, in *Shrestha*, the defendant had provided the government with information concerning his offense at the time of his initial interview with law enforcement authorities and the Ninth Circuit concluded that the defendant's subsequent recantation did not diminish the information he had earlier provided to federal agents. *Id*. at 940. In contrast, nothing in the record before this Court suggests that petitioner made any good faith effort to provide the government with any information concerning his offense. The instant case is therefore distinguishable from *Shrestha*.

The government offered, both before and after trial, to hear petitioner's proffer so that he could benefit from either a substantial assistance motion under U.S.S.G. § 5K1.1 or a safety valve motion under U.S.S.G. § 5C1.2. Petitioner did not accept the offer. While petitioner was entitled to maintain his innocence, the fact remains that he never provided to the government, by proffer or otherwise, all information and evidence that he had concerning his offense as required by § 5C1.2(5). Because petitioner did not comply with the provisions of section (5), he did not qualify for a safety valve reduction and counsel, therefore, did not render ineffective assistance when he failed to request such a reduction. Accordingly, petitioner's § 2255 motion should be denied with respect to his third ground for relief.

### Failure to Define Elements

Petitioner asserts in his fourth ground for relief that the indictment filed against him was illegal because it failed to define the elements of the offense. An indictment is required to set forth the

REPORT AND RECOMMENDATION
PAGE - 12

elements of the offense sought to be charged. *United States v. Debrow*, 346 U.S. 374, 376 (1953).

The Supreme Court has explained that

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Id*.

This Court's review of the indictment returned by the grand jury on February 5, 2004, reveals no constitutional deficiency as it adequately apprises petitioner of the elements of the offense. No more is required. *See Debrow*, 346 U.S. at 376. Accordingly, petitioner's § 2255 motion should be denied with respect to his third ground for relief.

### CONCLUSION

As none of petitioner's claims has merit, petitioner's § 2255 motion should be denied. A proposed Report and Recommendation is attached.

DATED this 8th day of May, 2007.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13